UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VALIANT LEON WHITE, JR.,

                Plaintiff,

v.

SHERI NEWCOMB et al.,

                Defendants.

_____/

Case No. 2:21-cv-249

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and state law. Plaintiff has paid the full filing fee presumably because he recognizes that he is barred from proceeding *in forma pauperis* by the "three-strikes" provision of 28 U.S.C. § 1915(g). *See White v. Weathers*, No. 2:12-cv-11530 (E.D. Mich. May 9, 2012) (denying Plaintiff leave to proceed *in forma pauperis* because he previously filed at least three cases that had been dismissed as frivolous, malicious, or for failure to state a claim); *White v. Wayne Cnty. Cir. Ct. Clerks*, No. 2:07-cv-13818 (E.D. Mich. Oct. 23, 2007); *White v. Wayne Cnty. Cir. Ct.*, No. 2:03-cv-74171 (E.D. Mich. May 12, 2004); *Neal v. Sugierski*, No. 2:03-cv-72729 (E.D. Mich. Aug. 21, 2003).

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rule 21, the Court will drop Defendants Burke, Horton, Trotter, LaCrosse, Bosbous, Smith, Ledford, and McDonald from this action and dismiss the claims against them without prejudice. The Court will also dismiss without prejudice as misjoined Plaintiff's claims against Defendants

Corrigan and McLean other than Plaintiff's claim that they conspired with Defendant Newcomb to cover up the investigation into Plaintiff's November 24, 2017 misconduct charge.

Additionally, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLean and Corrigan. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Newcomb: (1) Plaintiff's First Amendment retaliation claims except for (a) his claim that Newcomb denied him cleaning supplies on November 12, 2020, and (b) his claim that she attempted to deny him breakfast on November 16, 2021, and later reported him for misconduct; and (2) Plaintiff's Eighth Amendment claims except for the claim that Newcomb denied Plaintiff cleaning supplies on November 12, 2020; (3) Plaintiff's Fourteenth Amendment equal protection and due process claims; and (4) Plaintiff's access-to-the-court claims. Plaintiff's First Amendment retaliation claims related to conduct on November 12, 2020 and November 16, 2021, and his Eighth Amendment deliberate indifference claim related to conduct on November 12, 2020 remain in the case.

The Court will further deny Plaintiff's request to supplement the pleadings. (ECF No. 4.)

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF personnel: Warden Connie Horton; Deputy Warden J. Corrigan; Grievance Coordinator M. McLean; Classification Directors Unknown Ledford and Unknown McDonald; Librarian Brian Ronald Smith; and Prison Guards Sheri Newcomb, Unknown Burke, M. Trotter, M. LaCrosse, and Unknown Bosbous.

Plaintiff's complaint is hardly a model for clarity, for providing a short and plain statement, or for complying with the instructions of the form complaint. All civil rights complaints brought by prisoners must be submitted on the form provided by this Court. *See* W.D. Mich. LCivR 5.6(a). The form complaint expressly directs, **"[d]o not give any legal arguments or cite any cases or statutes."** *W.D. Mich. Section 1983 Civil Rights Form* 4 (Sept. 2021) (emphasis in original), https://www.miwd.uscourts.gov/sites/miwd/files/cmpref.pdf. Instead, the form's relevant section instructs plaintiffs to "[s]tate here the **facts** of your case." (*Id.*) (emphasis in original). Plaintiff uses the first two pages of the form (*see* Compl., ECF No. 1, PageID.1–2) before abandoning it and in its place attaches pages of single-spaced, printed text (*id.*, PageID.4–19.) Those pages are replete with legalese, citations to cases and statutes, citations to MDOC policies and grievances, and many purported legal conclusions. As a result, the complaint creates an unavoidable challenge for the reader to discern the facts alleged. After distillation, the complaint describes several unrelated sets of allegations against various Defendants that occurred over the space of four years.

Plaintiff's first allegation asserts that on November 24, 2017, Defendant Newcomb falsely reported him for misconduct. Newcomb accused Plaintiff of sharing food with a prisoner at another

table in violation of policy. According to a document attached to the complaint, the other prisoner sat at some point at Plaintiff's table, offered Plaintiff his food, and then left. (*See* ECF No. 1-1, PageID.21.) Plaintiff contends that Newcomb reported him for misconduct in retaliation for his many pending grievances and complaints against her. Plaintiff asserts that he had filed grievances and complaints with the Office of the Legislative Corrections Ombudsman to report Newcomb for "PROHIBITED INTERNET USE, GAMBLING(SOLITARY), PERSONAL SHOPPING, ETC., IN DERELICTION OF DUTY . . . while on Duty . . . ." (Compl., ECF No. 1, PageID.5 (verbatim).) He further cites 13 grievances that presumably were pending at the time. (*Id.*)

Plaintiff alleges that Defendants McLean and Corrigan "Retaliated in Collusion with Def. Newcomb's INITIAL Retaliation to Cover-up a thorough Investigation, DISCIPLINE, TERMINATION/DISCHARGE, Falsely Rejected" three grievances. (*Id.*, PageID.6 (verbatim).) Although the allegations are not clear, Plaintiff apparently filed grievances seeking to have Newcomb investigated by and terminated from the MDOC.

The remainder of the complaint continues through November 2021 and describes in varying detail approximately 20 more occasions during which assorted Defendants purportedly retaliated against Plaintiff, "stalked" him, issued him false misconducts, discriminated against him, delayed his access to a form, and denied him cleaning supplies.

Plaintiff seeks injunctive relief and $800,000.00 in damages.

## II.   **Plaintiff's Supplemental Pleading**

Plaintiff has filed what he titles an "amended complaint and/or supplemental pleading[]" (ECF No. 4, PageID.92), which he claims to bring "pursuant to Federal Rules of Civil Procedure Rule 15(d)" (*id.*, PageID.93).

As a preliminary matter, there is a difference between an amended and a supplemental pleading. A party may amend his or her pleading once, as a matter of course, in the preliminary

stages of a case. Fed. R. Civ. P. 15(a)(1). A party may not, however, supplement the initial pleading without the permission of the Court. Fed. R. Civ. P. 15(d). A supplemental pleading is one "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.*

The Court has reviewed the proposed pleading and concluded that it is a supplemental pleading because it describes events "that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Moreover, in his pleading, Plaintiff expressly refers to Rule 15(d) and asserts that he seeks to add allegations "that happened after the date of the ORIGINAL Complaint." (ECF No. 4, PageID.93 (verbatim).)

However, Plaintiff has not properly sought leave to supplement his initial pleading as required by Rule 15(d). Additionally, Plaintiff's supplemental complaint again fails to comply with the directions of the form complaint. Plaintiff repeatedly cites statutes and cases. He quotes MDOC policy directives and employee handbook rules at length. Further, as described below, Plaintiff has misjoined multiple Defendants to this action in his initial complaint. Many of the new allegations involve Defendants who are misjoined. It is unclear at times whether the new facts that are alleged involving the misjoined Defendants are provided to give context to claims against the properly joined Defendant or in contemplation of claims against the misjoined Defendants. For these reasons, the Court will deny Plaintiff's attempt to supplement the complaint.[1]

### III.   Misjoinder

Plaintiff brings this action against 11 Defendants, alleging discrete events that occurred over approximately four years.

---

[1] Plaintiff is further directed that the Court may summarily dismiss any action if he files a complaint—original, amended, or supplemental—in which he cites statutes or cases or otherwise fails to comply with the directions of the form complaint.

### A.      Improper joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit,

whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs

when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is
> asserted against them jointly, severally, or in the alternative with respect to or
> arising out of the same transaction, occurrence, or series of transactions or
> occurrences; and (B) any question of law or fact common to all defendants will
> arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent

or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that where multiple parties are named, as in this case, the analysis

under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there
> is more than one party on one or both sides of the action. It is not concerned with
> joinder of claims, which is governed by Rule 18. Therefore, in actions involving
> multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in
> a single action only if plaintiff asserts at least one claim to relief against each of
> them that arises out of the same transaction or occurrence and presents questions of
> law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001),

*quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*,

No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both

commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or

amended complaint unless *one* claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)

(declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first named Defendant and the first clear factual allegations involving that Defendant to determine which portions of the action should be considered related.[2] Plaintiff names Defendant Newcomb as the first Defendant in the caption of the complaint (Compl., ECF No. 1, PageID.1), in the list of Defendants (*id.*, PageID.2), and in his allegations giving rise to a putative claim (*id.*, PageID.4). As noted above, Plaintiff's first allegations that reasonably give rise to a claim assert that Defendant Newcomb filed a false misconduct against

---

[2] The analysis of joinder must start somewhere. The first-named Defendant is also referenced in the first factual allegations in the complaint involving any Defendant. Therefore, by accepting the first-named Defendant and first factual allegations giving rise to a putative claim as the foundation for this joinder analysis, the Court is considering the issue of joinder of Defendants as Plaintiff has presented it in his complaint.

him for passing or sharing food, and Defendants Corrigan and McLean failed to sufficiently investigate.

The conduct by Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, and Bosbous is wholly unrelated to Plaintiff's putative claim regarding the false misconduct and related investigation. Moreover, there is neither a transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor a question of law or fact, *see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Plaintiff has, therefore, improperly joined to this action Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, and Bosbous as well as the claims against Defendants Corrigan and Mclean other than Plaintiff's claims arising out of their failure to investigate the November 24, 2017 misconduct charge**.**

**B.  Remedy**

Because the Court has concluded that Plaintiff has improperly joined to this action multiple Defendants and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").

"Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation.

Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, and Bosbous engaged in conduct no earlier than 2020. The same is true for any allegations against Defendants Corrigan and McLean beyond the claims arising out of their failure to investigate the November 24, 2017, misconduct charge. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, Bosbous, Corrigan, and McLean, and he will not suffer gratuitous harm if claims against these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, and Bosbous from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court

can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). The Court will further dismiss without prejudice the misjoined claims against Defendant Corrigan and McLean. If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee.[3]

## IV.   **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court already has warned Plaintiff of this requirement. *See White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *8 n.2 (W.D. Mich. Aug. 30, 2021). Notwithstanding the previous warning, Plaintiff again filed claims against misjoined Defendants. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

(quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Statute of limitations

Plaintiff's claims against Defendants Newcomb, Corrigan, and McLean arising out of the November 24, 2017 misconduct charge and its investigation are barred by the statute of limitations.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220

(6th Cir. 1996). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[4]

Plaintiff asserts claims arising in late November and early December 2017. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued by early December 2017. However, he did not file his complaint until late December 2021, well past Michigan's three-year limit. Thus, absent tolling, Plaintiff's claim is untimely.

Michigan law provides several grounds for tolling the statute of limitations. The statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003) (citing *Yeo v. State Farm Fire & Cas. Ins. Co.*, 618 N.W.2d 916, 916 (Mich. Ct. App. 2000)). However, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

---

[4] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

The Court has reviewed the dates of Plaintiff's grievance documents (ECF No. 1-12, PageID.83–88) and of his prior action, *White v. Perron* (W.D. Mich.).[5] Although Plaintiff's limitations period was tolled while Plaintiff exhausted his administrative remedies and while his earlier action was pending, the tolling is insufficient to overcome Plaintiff's delay in filing his instant complaint. His claim is barred by the statute of limitations.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim).

Accordingly, the Court will dismiss for failure to state a claim Plaintiff's claims arising out of the November 24, 2017 misconduct charge and its investigation.

### B.     First Amendment

Plaintiff has alleged approximately 15 separate instances of retaliation.[6]

---

[5] In that earlier action, the Court warned Plaintiff that he approached the end of his period of limitations and concluded that "if he act[ed] promptly, Plaintiff ha[d] sufficient time to bring his earliest claims against Defendant Newcomb." *White*, 2021 WL 3855589, at *8 n.1. Rather than acting promptly, Plaintiff waited nearly four months before he filed the instant action.

[6] Plaintiff's failure to allege only facts or to clearly lay out individual claims leaves the Court to infer what Plaintiff intends. In his allegations describing some events, Plaintiff refers to "retaliation" or "adverse action." (*See, e.g.*, Compl., ECF No. 1, PageID.6 ("Def. Newcomb again took 'ADVERSE ACTION' Retaliated . . .").) In his allegations describing other events, Plaintiff describes conduct that he arguably may intend to support a retaliation claim but otherwise lacks any clear reference to retaliation. (*See, e.g.*, *id.*, PageID.12 (describing Newcomb's conduct on

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

---

August 2, 2021, as stalking, disturbing, threatening, intimidating, and humiliating only one paragraph after he described similar conduct the day earlier as an act of retaliation).)

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

In the majority of Plaintiff's allegations, he merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Newcomb's actions on those occasions were motivated by any of his protected conduct.[7] He merely concludes that because he

---

[7] Indeed, the complaint suggests that at least some of Plaintiff's grievances against Defendant Newcomb were frivolous.

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3.

MDOC policy permits grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement *that personally affect the grievant* . . . ." MDOC Pol'y Directive 03.02.130, ¶ F (eff. Mar. 18, 2019) (emphasis added). Plaintiff asserts that he submitted grievances complaining of Newcomb's alleged internet use, gambling, and shopping while working in violation of policy. It is not at all clear that violation of policies related to internet use, gambling, or shopping personally affected Plaintiff, suggesting that Plaintiff lacked any justification for filing those prison grievances.

Likewise, many of Plaintiff's allegations do not describe adverse action. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. Some of Plaintiff's descriptions of putative adverse action allege, for example, that Newcomb stepped in front of him and blocked his path (Compl., ECF No. 1, PageID.6), refused to provide legal forms because it was the weekend (*id.*), and conducted a cell

filed some grievances within a few days, weeks or months before Newcomb's actions, her actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Describing many occasions, Plaintiff merely alleges temporal proximity between Newcomb's conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

Plaintiff's allegations concerning only two occasions suffice to state a claim for retaliation: (1) Newcomb's denial of cleaning supplies on November 12, 2020 (*see* Compl., ECF No. 1, PageID.8–9); (2) Newcomb's attempted refusal to allow Plaintiff to eat breakfast on November 16, 2021, and the subsequent misconduct charge (*see id.*, PageID.13). Accordingly, the Court will dismiss all other putative retaliation claims against Newcomb.

### C.    Eighth Amendment

Plaintiff also alleges that Defendant Newcomb violated rights provided to him by the Eighth Amendment, but he again fails to clearly articulate which facts he purports support such a claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene

---

search without any alleged destruction of property (*id.*, PageID.9). Such factual allegations fail to allege adverse action.

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff's only allegations that plausibly state an Eighth Amendment claim involve Newcomb's refusal on November 12, 2020 to provide the cleaning supplies that the warden purportedly provided during a COVID-19 outbreak on Plaintiff's unit. The Court concludes at this early juncture that Plaintiff alleges facts sufficient to state an Eighth Amendment claim.

**D.      Fourteenth Amendment**

Plaintiff further alleges violations of his equal protection and due process rights, both provided to him by the Fourteenth Amendment.

**1.      Equal protection**

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of*

*Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff offers little to aid the Court's resolution of his putative equal protection claim. In the complaint, Plaintiff asserts that Defendant Newcomb "[d]iscriminat[es] against prisoners because of their RACE, RELIGION, etc." (Compl., ECF No. 1, PageID.16) but without providing any explanation and only scant factual allegations that clearly support such a claim. Plaintiff also alleges that on September 29, 2021, he was the only prisoner of three who were talking while Plaintiff returned from lunch that Newcomb wrote up for a loitering misconduct. Plaintiff alleges on other occasions simply that Newcomb discriminated against him. He also generally alleges that "Defendants MAINLY ONLY seek out NON-WHITE prisoners" to treat poorly. (*Id.*, PageID.4.)

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff's allegation implies that he and the other prisoner were similarly situated, but he states no facts to support that implication. Absent such allegations, Plaintiff cannot

show that he is similarly situated to the comparators. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *see also Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metro. Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Because Plaintiff fails to allege facts to show that any comparators are similarly situated, Plaintiff has failed to state an equal protection claim. Accordingly, the Court will dismiss Plaintiff's equal protection claims.

### 2.       Due process

Plaintiff further alleges violations of his due process rights, presumably because Defendant Newcomb wrote a purportedly false misconduct report against him. Plaintiff alleges that Newcomb reported him for several Class II and III misconducts. Under MDOC Policy Directive 03.03.105 ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

A minor misconduct conviction does not implicate the due process clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Plaintiff has not identified any significant deprivation arising from his misconduct convictions. Accordingly, the Court will dismiss his due process claims.

### E.      Access to the Courts

Plaintiff has also alleged that Defendant Newcomb impeded his access to the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d

884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has utterly failed to allege any facts to support that he suffered an actual injury or that the underlying litigation was nonfrivolous. Consequently, he fails to state an access-to-the-courts claim. Accordingly, the Court will dismiss his claim.

## Conclusion

The Court will deny Plaintiff's pending attempt to supplement the complaint.

Additionally, pursuant to Rules 18, 20, and 21 of the Federal Rules of Civil Procedure, the Court determines that Defendants Horton, Ledford, McDonald, Smith, Burke, Trotter, LaCrosse, and Bosbous are misjoined in this action. The Court will drop them from this suit, dismissing Plaintiff's claims against them without prejudice. The Court will also dismiss without prejudice Plaintiff's claims against Defendant Corrigan and McLean other than the retained claim alleging that they failed to investigate following the November 24, 2017 misconduct.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corrigan and McLean will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Newcomb: (1) Plaintiff's First Amendment retaliation claims except for (a) his claims that Newcomb denied him cleaning supplies on November 12, 2020, and (b) his claims that she attempted to deny him breakfast on November 16, 2021, and later reported him for misconduct; (2) Plaintiff's Eighth Amendment claims except for

the claim that Newcomb denied Plaintiff cleaning supplies on November 12, 2020; (3) Plaintiff's

Fourteenth Amendment equal protection and due process claims; and (4) Plaintiff's access-to-the-

court claims. Plaintiff's First Amendment retaliation claims related to conduct on November 12,

2020 and November 16, 2021, and his Eighth Amendment deliberate indifference claim related to

conduct on November 12, 2020 remain in the case.

An order consistent with this opinion will be entered.


Dated:     July 15, 2022                              /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge